IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-484-D

| | |
|---|---|
| CASSAUNDRA CRADDOCK, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-21, DE-23] pursuant to Fed. R. Civ. P. 12(c). Claimant Cassaundra Craddock ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability and Disability Insurance Benefits ("DIB"). Claimant responded to Defendant's motion [DE-25] and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on July 9, 2009, alleging disability beginning June 11, 2009. (R. 15, 128-29). Her claim was denied initially and upon reconsideration. (R. 15, 63-64). A hearing before the Administrative Law Judge ("ALJ") was

held on January 18, 2011, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 30-62). On February 7, 2011, the ALJ issued a decision denying Claimant's request for benefits. (R. 15-24). On April 29, 2013, the Appeals Council denied Claimant's request for review. (R. 1-6). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of the treating physician's opinion and (2) failure to consider Claimant's use of an assistive device when assessing Claimant's RFC. Pl.'s Mem. [DE-22] at 1.

3

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 17). Next, the ALJ determined Claimant had the following severe impairments: chiari malformation with right side neuropathy, migraine headaches, irritable bowel syndrome, anal incontinence and depressive disorder. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restriction in her activities of daily living, mild difficulties in social functioning, moderate difficulties in concentration, persistence and pace, and no episodes of decompensation. (R. 18).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work,[1] but is limited to unskilled work, occasional contact with the general public and must have ready access to a restroom. *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 18-22). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

a teacher, principal, education consultant or case manager. (R. 22). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 23).

**B.     Claimant's Testimony at the Administrative Hearing**

At the time of Claimant's administrative hearing, Claimant was 43 years old and unemployed. (R. 33, 36). Claimant has obtained several masters degrees in the education field, including masters in special education and school administration. (R. 35). Claimant was last employed with the Department of Defense Schools at Pope Elementary School on Pope Air Force Base, where her duties included teaching preschool-age disabled children. (R. 36). Claimant worked in the education sector from the early 1990s through 2009, working as a teacher's assistant, special education teacher, case manager for exceptional children, assistant principal and education consultant. (R. 37-38).

Claimant explained numerous medical conditions supporting her disability claim and her inability to work full-time. These medical conditions include depression and chiari malformation of the brain which causes Claimant to experience symptoms like dizziness, fatigue, and bowel and urinary problems. Her physicians at Duke recommend decompression brain surgery, which Claimant elected not to undergo because there is a 40 to 60 percent chance of improvement. (R. 40). Claimant testified that before her diagnosis of chiari malformation, the first symptom she experienced was headaches, followed by menstrual bleeding. (R. 41). Doctors performed a hysterectomy, but then discovered Claimant's symptoms were not resolved. Claimant next underwent an MRI and she was diagnosed with chiari malformation. *Id.* Claimant also testified that she started stumbling and

5

feeling dizzy, had ringing in her ears, and light and smell sensitivity. *Id.* She also had difficulty with swelling and sleeping, and was diagnosed as depressed. (R. 42).

Claimant testified she has headaches everyday, which sometimes begin in the morning. (R. 42, 44). The headaches stop when she takes medication and goes to sleep, but "the cycle starts all over again" when she wakes up. (R. 44). She cannot sit, stand, or walk for long and is only comfortable when lying down. (R. 43). Claimant uses a cane to ambulate and "tumbles" everyday. (R. 45). She also wears a diaper due to her incontinence issues even though she takes some medication for the problem. (R. 45-46). Claimant experiences fatigue which causes her to lie down or recline during the day. (R. 47-48). Claimant stands up approximately every two hours during the day to move around. (R. 50). Claimant has difficulty with concentration and memory which interfere with her ability to write, drive and perform errands. (R. 51-52).

## C.     Vocational Expert's Testimony at the Administrative Hearing

Theodore Sawyer testified as a VE at the administrative hearing. (R. 56-61). After the VE's testimony regarding Claimant's past work experience (R. 57), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed two hypothetical questions. First, the ALJ asked the VE whether jobs would be available for an individual with the physical capacity to perform light work and the additional limitations of unskilled work, occasional contact with the general public and ready access to a restroom. (R. 58). The VE indicated that the jobs of mail clerk (DOT # 209.687-026), garment sorter (DOT # 222.687-014), and office helper (DOT # 239.567-010) would be available. (R. 58-59). Next, the ALJ asked the VE to assume the same hypothetical, but with all the limitations testified to by Claimant, and asked whether the same jobs would be available. (R. 59). The VE responded that an inability to sustain

6

activity due to fatigue, the need to lie down, sensitivity to light, and an inability to deal with stresses of a weekly job would preclude all jobs. *Id.*

Claimant's attorney next questioned the VE. First, Claimant's attorney asked whether the listed jobs of mail clerk, garment sorter, and office helper included morning and afternoon breaks of 15 minutes each, and if such breaks could be used for personal tasks such as smoking or visiting the restroom. (R. 60). The VE responded in the affirmative. *Id.* The attorney next asked whether restroom breaks outside the designated morning and afternoon breaks would be acceptable. *Id.* The VE responded that such additional breaks would not be problematic if they did not significantly impact the individual's ability to perform the job. *Id.*

## V. DISCUSSION

Claimant contends the ALJ erred by failing to evaluate the October 2008 medical opinion of her primary care physician, Dr. Christian Donohue. Pl.'s Mem. at 8-10. The Commissioner contends that it was harmless error for the ALJ not to have discussed Dr. Donohue's opinion because "there wasn't any substance that would change the ALJ's decision." Def.'s Mem. [DE-24] at 5. The undersigned agrees with Claimant that the ALJ did not adequately indicate or explain the weight, if any, he gave to the opinion of this treating physician and, thus, the case should be remanded.

The rules regarding the weight to be accorded medical opinion evidence and the ALJ's duty to explain such weight are well established. Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. 20 C.F.R. § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's

7

alleged disability, than non-treating sources, such as consultative examiners. 20 C.F.R. § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Id.* Similarly, "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); *see Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted). However, the ALJ must give "good reasons" for the weight assigned to a treating source's opinion. *See* 20 C.F.R. § 404.1527(c)(2); *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (per curiam). Where a physician presents relevant evidence to support his opinion, his opinion is entitled to more weight. 20 C.F.R. § 404.1527(c)(2).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. *See* SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason.

8

*Wireman*, 2006 WL 2565245, at *8.

"While the ALJ must give a treating physician's medical opinions special weight in certain circumstances, the ALJ is under no obligation to give a treating physician's legal conclusions any heightened evidentiary value." *Morgan v. Barnhart*, 142 F. App'x 716, 722 (4th Cir. 2005) (unpublished) (citations and quotations omitted); *see* 20 C.F.R. § 404.1527(e)(3). However, the ALJ is not free to ignore a treating physician's legal conclusions and must still "'evaluate all the evidence . . . to determine the extent to which the [treating physician's legal conclusion] is supported by the record.'" *Morgan*, 142 F. App'x at 722 (quoting SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996)) (alteration in original). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citing *Hill v. Astrue*, 698 F.3d 2253, 1159-60 (9th Cir. 2012); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747, 750 (6th Cir. 2007); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006)). However, "[i]n some cases, the failure of an ALJ to explicitly state the weight given to a medical opinion constitute harmless error, so long as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated." *Bryant v. Colvin*, No. 5:11-CV-648-D, 2013 WL 3455736, at *5 (E.D.N.C. July 9, 2013) (citations and quotations omitted).

Here, the opinion at issue appears in an October 22, 2008 letter in which Dr. Donohue stated as follows:

> I am the primary care physician for Mrs. Mills-Craddock. I have been asked to write a physician's statement regarding her headaches and migraines. She should have other physician statements being sent in regards to her Chiari Malformation and her mood issues from her specialists in those fields.
> Mrs. Mills-Craddock suffers from Migraine headaches for which she has seen

9

multiple specialists. Some of her headache [sic] might be attributed to the Chiari Malformation, which will be commented on by her Neurosurgical specialist. However, she suffers from migraines and headaches beyond those. These can be quite debilitating and incapacitating for her requiring her to remove herself from her present activity to avoid further stimuli and the use of medicines that could have side effects that may effect her performance. Her headaches can be triggered by various environmental factors. These may include strong smells/odors, temperature swings, heavy exertion, loud sounds, or bright lights.

    She has had multiple exams with multiple providers and is on medical management. She has various trial of medicines in the past as well. Her migraine frequency and intensity may fluctuate from time to time but will probably never be "cured."

    Any accommodations that could be made to help prevent these environmental factors from exacerbating her symptoms would be greatly appreciated.

(R. 490-91, 855). Claimant correctly asserts that nowhere in the decision does the ALJ discuss or refer to the 2008 opinion by Dr. Donohue, although the decision does summarize one of Dr. Donohue's treatment notes in July 2009, stating the note "indicated that the claimant was healthy and warned her to be sure she was getting treatment for her problems not just symptoms." (R. 20). The decision also contains a summary of the medical treatment records by various Veterans Affairs ("VA") physicians appearing in the same exhibit where the opinion at issue is located.[2] (R. 19-20).

Despite the ALJ's discussion of some of Dr. Donohue's treatment notes, the ALJ failed to discuss or assign weight to Dr. Donohue's 2008 opinion that Claimant's headaches and migraines are debilitating, "requiring [Claimant] to remove herself from her present activity to avoid further stimuli and the use of medicines that could have side effects that may effect her performance," and will "probably never be 'cured.'" (R. 490-91, 855). The ALJ must evaluate every medical opinion received, 20 C.F.R. § 404.1527(c), and the failure to do so was error. *See Moreno v. Colvin*, No. 4:12-CV-143-D, Order [DE-31] (E.D.N.C. Sept. 6, 2013) (remanding case for ALJ's failure to

---

[2] The medical records from the VA Hospital in Durham contain records from all VA physicians that Claimant treated with, not just Dr. Donohue who was her VA primary care physician.

10

mention treating physician opinion given importance of properly analyzing physician opinions); *Bryant*, 2013 WL 3455736, at *6 (adopting magistrate judge's recommendation remanding case, despite the ALJ's summary of the physicians' evidence, because the ALJ "fail[ed] to indicate ... the weight he accorded all opinions ... and the reasons for such weight"). The Commissioner does not appear to dispute that Dr. Donohue's 2008 statement, appearing as a letter to an agency, qualifies as a "medical opinion,"[3] but rather provides several reasons why the court should find harmless the ALJ's error in failing to consider the opinion. *See* Def.'s Mem. at 5 (arguing that Dr. Donohue's opinion had no "substance that would change the ALJ's decision, and that, as a result, it was not fatal error for the ALJ not to have discussed it").

First, the Commissioner reasons that the ALJ's failure to discuss Dr. Donohue's opinion is harmless error because the opinion is not as significant as Claimant alleges, noting that it only relates to Claimant's non-chiari malformation headaches, was given before the onset of Claimant's alleged disability period, while Claimant was still employed, and given at the request of someone else seeking a statement on Claimant's condition. *Id.* Here, the Commissioner's reasoning is flawed where the ALJ failed to state what, if any, consideration he gave Dr. Donohue's opinion. It is not the role of the court to guess as to what level of consideration the ALJ gave a medical opinion or why the ALJ may have chosen to discount it. *See Dickerson v. Colvin*, No. 2:13-CV-14-D, 2014 WL 1207851, at *2 (E.D.N.C. Mar. 24, 2014) ("The Commissioner, not this court, is to make the initial determination about how much weight to afford the opinion of a treating physician."); *Bonecutter*

---

[3] "Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Dr. Donohue is a physician and the statement at issue reflects his judgment about the severity of Claimant's headaches and migraines and her restrictions due to these impairments. Thus, the statement at issue qualifies as a medical opinion as defined by the regulations.

11

*v. Astrue*, No. 3:11-CV-576, 2012 WL 4891693, at *9 (S.D.W. Va. Sept. 12, 2012) ("While the undersigned conceivably could examine Dr. Wagner's opinion and find numerous reasons to discount or discredit it, that exercise would require the weighing of evidence and the resolving of conflicts; tasks which simply are not within the scope of this Court's review."); *Abernathy v. Astrue*, No. 4:08-CV-99-FL, 2009 WL 1578533, at *3 (E.D.N.C. June 3, 2009) ("[T]he ALJ may have had a proper reason to discount these post-DLI [medical opinion] records. However, the court will not undertake to hazard a guess as to what such valid reasons might be.").

Further, the Commissioner states that Dr. Donohue's opinion simply "parrots [Claimant's] subjective complaints," and is not supported by other objective evidence. Def.'s Mem. at 6. Again, it may be entirely proper to discount Dr. Donohue's medical opinion based on a lack of support from the objective medical evidence of record, however, it is not for this court to weigh the evidence or supply a rationale for rejecting an opinion. *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave"). The Commissioner also overlooks the fact that evaluation of a medical opinion can be integral to a credibility analysis if it corroborates a Claimant's statements. *See Bonecutter*, 2012 WL 4891693, at *9 ("Information recorded by medical sources regarding the onset, description, character and location of the pain, as well as the medical source's impression regarding the functional impact of the pain are extremely valuable to the ALJ's credibility assessment."). Based on Dr. Donohue's statement that the headaches require Claimant to cease her activities, the opinion can be read to affirm Claimant's statements and suggest that Claimant could not perform work at the specified RFC level, which counters the ALJ's determination to a certain extent. *See Dew ex rel K.W. v. Colvin*, No. 4:12-CV-129-D, 2013 WL 4523617, at *6 (E.D.N.C. Aug. 27, 2013) (remanding case where ALJ failed to

12

consider treating medical opinion that countered ALJ's determination); *Bryant*, 2013 WL 3455736, at *6 (remanding case for failure to properly evaluate all treating opinions where the opinions were not consistent with the ALJ's disability determination); *cf. Love-Moore*, 2013 WL 5350870, at *2 (finding the ALJ's failure to weigh the opinion of a non-treating physician was harmless error where opinion was consistent with the ALJ's determination). Here, the ALJ should have considered and weighed Dr. Donohue's opinion in his decision.

Accordingly, the ALJ's error in failing to mention or weigh the 2008 medical opinion of Dr. Donohue was not harmless error and requires remand. *See Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013) ("Just as it is not our province to 'reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ],' it is also not our province—nor the province of the district court—to engage in these exercises in the first instance.") (internal citation omitted). On remand, it is within the ALJ's discretion to accept or reject the opinion in whole or in part, so long as he clearly articulates valid reasons for so doing. Further, where an ALJ improperly fails to weigh such medical opinions and where those opinions are "integral in determining Claimant's RFC and credibility, the ALJ should reevaluate both the RFC and credibility determinations on remand." *Prather v. Colvin*, No. 5:12-CV-171-FL, 2013 WL 4806958 (E.D.N.C. Sept. 9, 2013) (citing SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). Therefore, the court does not address Claimant's remaining RFC argument as it is also recommended that the ALJ reconsider the RFC determination on remand.

## VI. CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-21] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-

13

23] be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 8 day of August 2014.

Robert B. Jones, Jr.
United States Magistrate Judge